IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| | : | CASE No. 2:12-CR-182 |
| vs. | : | |
| | : | JUDGE GEORGE C. SMITH |
| WILLIAM R. KISOR, II | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through undersigned counsel, hereby submits its Memorandum in Aid of Sentencing in response to Defendant's Sentencing Memorandum.

**BACKGROUND**

On October 5, 2012, the defendant, William R. Kisor, II, entered a plea of guilty pursuant to a plea agreement, to a one-count Information that charged him with possessing visual depictions of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(4)(B). The defendant admitted to chatting online with an undercover agent who was posing as the father of a five-year-old female, regarding the defendant's interest in engaging in sexual activity with the agent's fictitious minor daughter. The defendant admitted that during the course of these chats he sent the agent links to online images of child pornography, which depicted prepubescent females ranging in age from approximately three to ten years old. During the subsequent execution of a search warrant at the defendant's residence, he was found to be in possession of several media devices which contained approximately 145 images of child pornography.

1

The defendant also admitted that he was previously convicted of, and was on supervised release for, convictions for Receipt of Child Pornography (18 U.S.C. 2252(a)(2)) and Coercion and Enticement of a Minor (18 U.S.C. 2422(b)).  The government filed a notice with the Court of its intention to rely on the defendant's prior conviction for Coercion and Enticement of a Minor for purposes of sentencing.

Sentencing in this matter is now scheduled for January 23, 2013.  The defendant filed a sentencing memorandum ("Defendant's Memorandum") on January 7, 2013.

## PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION

The United States has reviewed the Presentence Investigation Report ("PSR") in this case and submits that the Probation Officer has correctly calculated the advisory guideline sentencing range.  The United States thus raises no objections to the PSR.  The advisory guideline range for the defendant is 135 to 168 months, based on a total offense level 30 and a criminal history category IV.  There are no factors warranting departure from the applicable guideline range, but the PSR does note the defendant's history and characteristics, the nature of the offense, and the defendant's history of two prior convictions involving the exploitation of minors as potential factors warranting deviation from the advisory guidelines range.  The sentence recommended by the Probation Officer is 162 months, which represents a sentence at the upper end of the applicable sentencing guideline range.

In Defendant's Memorandum, he requests the Court impose the statutory mandatory minimum sentence of 120 months on the offenses in this case, and consecutive sentences of 24 months on each of the cases for which he is facing a revocation of his supervised release.  As a basis for this request, the defendant asks the Court to consider his unstable childhood, his service

in the military, and what the defendant argues are flaws in the guideline section applicable to his offense.

The government concurs with the sentence recommended by the Probation Officer in this case, and submits that the downward deviation sought by the defendant is not warranted in light of the facts, including all of the defendant's relevant conduct, in this case and the defendant's history of criminal activity involving minors. As a basis for this recommendation, the government submits the following analysis.

### ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

After *Booker v. United States*, district courts should engage in a three-step sentencing procedure. 543 U.S. 220 (2005). Courts are to first determine the applicable guideline range, then consider whether a departure from that guideline range is appropriate, and finally consider the applicable guideline range, "along with all of the factors listed in section 3553(a)" to determine the sentence to impose. The central command to district courts in imposing sentence is to fashion a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing set forth in 18 U.S.C. § 3553(a).

### I. Guideline Calculation and Possible Departure

As indicated above, the applicable sentencing guideline range for the defendant was properly calculated in the PSR, resulting in a sentencing guideline range of 135 to 168 months of imprisonment, a term of supervised release of 5 years to life, and a fine of $15,000 to $150,000. There are no objections to this calculation and the government concurs that there are no bases to depart from the applicable guidelines range in this case.

3

## II. Section 3553(a) Factors

Pursuant to 18 U.S.C. §3553(a), there are seven factors the court is to consider during sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. The government submits that the sentencing factors that are most relevant in this case, as discussed more fully below, warrant a lengthy term of incarceration.

Nature and Circumstances of the Offense/ History and Characteristics of the Defendant

A. Nature and Circumstances of the Offense

The government submits that the nature of the offense at issue in this case is grave and dangerous, as indicated by the severity of the potential penalties Congress has provided for the offense and the policy statements and findings of Congress related to child exploitation offenses. Although the government does not dispute the statement in Defendant's Memorandum that possession of child pornography offenses are frequently not as serious as offenses that involve hands-on abuse of children, it is a serious offense nonetheless, and in this case, the defendant's relevant conduct involved far more than mere possession.

At the time he entered his guilty plea, the defendant admitted that had engaged in online chats regarding his desire to engage in sexual activity with a five-year-old child, specifically stating that he wished to make the girl his "sex slave." The defendant also admitted to engaging in a phone conversation with the undercover officer, and that during that phone conversation he discussed raising the girl to be his "tramp. The defendant's admitted activities also involved

4

sharing links to images that depicted the sexual abuse of children as young as three years old,[2] and requesting that the undercover agent send him child pornography files.

Thus, while the government acknowledges that the crime for which the defendant is to be sentenced is not as grave as a hands-on offense involving the sexual abuse of a child, when all of the defendant's activities are considered, it is clear that this is not a case that involves only the possession of child pornography. The defendant sought out a child for purposes of sexual activity, discussed in explicit detail his desire to sexually abuse the child, and shared images of the sexual depravity he preferred. This is a heinous crime, and the government submits that consideration of the nature and circumstances of the offense in this case warrants the guideline sentence recommended by the Probation Officer.

B.   History and Characteristics of the Defendant

The defendant was raised by both parents until he was seven years old, at which time his parents divorced. PSR ¶ 43. Despite a less than ideal childhood involving an alcoholic father and absentee mother, the defendant has been reconciled with his mother for most of his life and

---

[2] The United States points out that the defendant could have been charged with Distribution of Child Pornography under 18 U.S.C. § 2252(A)(2) which, in light of the defendant's criminal history would have entailed a mandatory minimum period of 15 years incarceration, a maximum of 40 years incarceration, and would result in a guideline score 4 levels higher. Thus, he has already substantially benefitted from the plea agreement in this case. See United States v. Alvarado, 615 F.3d 916, 925 (8th Cir. 2010) (holding that in determining a sentence, the district court did not consider an inappropriate or irrelevant factor by considering the benefit the defendant received from the government's charging decision); United States v. Jimenez-Gutierrez, 491 F.3d 923, 928 (8th Cir. 2007) ("[A] court may take into consideration the benefits of a plea agreement, the facts surrounding uncharged conduct, or the benefits of lenient charging decisions in fashioning a sentence . . . ."). See also United States v. Mack, 452 F.3d 744, 745-46 (8th Cir. 2006) (holding that, in sentencing a defendant for his sexual abuse of a minor, the sentencing court could consider the defendant's possession of child pornography where the pornography was related to the abuse and the government had originally indicted defendant for abuse and possession, but the government had dismissed the possession charge during the plea process).

was living with her at the time of the offense in this case. PSR ¶¶ 53,57-60. Indeed, the defendant's mother and her significant other continue to support him and welcome them into their home. Id. at ¶ 62.

In contrast to other defendants before this Court, the defendant's background provides no real explanation for his crimes. The defendant's military history, employment history and attendance at various trade and business schools (PSR ¶¶ 54,70-76), provide evidence of the various ways that he could have been an asset to the community, had he not instead decided to repeatedly sexually exploit children. Although the defendant clearly has mental and emotional health issues, including a possible alcohol abuse issue, he has been provided ample opportunity to address these issues, and instead continued his involvement in child exploitation offenses. PSR ¶¶ 64-65. The government thus submits that weighing of the defendant's history, including his history of criminal activity involving children, weighs in favor of a within guideline sentence.

The Statutory Purposes of 3553(a)

A.  Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

The government submits that a guideline sentence is necessary to accomplish all of these purposes. As indicated above, Congress has determined that all crimes involving the sexual exploitation of children, including the possession of child pornography, are serious offenses, and has thus provided for severe penalties for these crimes. The seriousness with which Congress views these offenses is demonstrated by its continual review and amendment of the statutes that define the offenses and provide for the punishment of them. When it enacted the Child Pornography Prevention Act of 1996, Congress cited numerous bases for amending the existing

child pornography laws and creating harsher statutory penalties for child pornography offenses. Specifically, Congress found that the various harms to the exploited children and to the public supported amendment of the child pornography laws, making the specific findings that:

> (2) ... child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years;
> (11)(A) the sexualization and eroticization of minors through any form of child pornographic images has a deleterious effect on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them.

P.L. 104-208, Section 121, Subsection 1.

Several of the specific offense characteristics discussed in the PSR further indicate the seriousness of the defendant's offense in this case. Of particular concern, are the nature of the images that the defendant possessed and the defendant's trading activities related to those images. PSR ¶¶ 24-25. The government submits that the extremely young age of some of the children depicted in the images the defendant possessed and the defendant's desire to obtain more images by trading with the undercover officer exacerbate the egregiousness of the defendant's offense and properly warrant the higher sentence reflected in the advisory guideline range.

Furthermore, the defendant's history of child exploitation offenses and willingness to engage in similar conduct quickly after being released from his prior period of incarceration both heighten the seriousness of the offense and demonstrate the defendant's lack of respect for the law and the orders of the Court. Thus, the government submits that only a guideline sentence will properly reflect the seriousness of this offense, promote respect for the laws that prohibit all offenses involving the exploitation of children, and provide just punishment for the crime that the defendant has committed.

B.  Afford Adequate Deterrence to Criminal Conduct

The government submits that a within guideline sentence is a necessary and appropriate specific and general deterrence measure in this case. The risk of recidivism that Congress found to be of particular concern in child sex offense related cases (*See United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008)(referring to Congress' longstanding concern with recidivism in child sex offender cases)), supports the imposition of a within guidelines sentence in this case. Specific deterrence is an even greater concern in this case, where the defendant was convicted of two child exploitation offenses in the past, and the sentences he received in those cases clearly did not deter him from continued criminal activity.

Furthermore, the government hopes that a lengthy sentence of incarceration in this case will serve as an example to other potential offenders who may not appreciate the gravity of this conduct, and that the possibility of lengthy terms of incarceration will deter those individuals from committing similar offenses. The deterrence of child pornography offenses is paramount to the goal of lessening the demand for child pornography and thereby reducing the number of innocent children being subjected to sexual exploitation, a goal which has been recognized by numerous courts. As stated by the 11th Circuit: "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *Pugh*, 515 F.3d at 1194 (citing *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). *See also United States v. Goff*, 501 F.3d 250, 260 (3rd Cir. 2007)(recognizing that "the consumer of child pornography 'creates a market' for the abuse by providing an economic motive for creating

8

and distributing the materials"). Thus, the government submits that consideration of the deterrence factor weighs in favor of a guideline sentence.

      C.       Protection of the Public from Future Crimes of the Defendant

The offense at issue in this case, combined with the defendant's history of offenses involving the sexual exploitation of children, indicates that the defendant poses a danger to the public. Although the defendant's instant offense does not involve a hands-on offense with a child, this lack of a hands-on offense does not eliminate his dangerousness. The defendant's activities involving online and phone conversations regarding his very explicit desires to sexually abuse a child demonstrate the threat he poses to the most innocent members of society. These conversations may not be so disturbing and indicative of dangerousness, were it not for the defendant's prior conviction which resulted from his travel to meet a 16-year-old girl for purposes of sexual activity. The defendant has shown a propensity for acting on his deviant interest in children, and the government believes that a guidelines sentence is necessary to incapacitate the defendant and thereby protect the young vulnerable members of society.

      <u>Kinds of Sentences Available, Sentencing Range and Policy Statements in the Guidelines</u>

Pursuant to 18 U.S.C. § 2252 a maximum sentence of 20 years of incarceration is authorized for the offense at issue in this case, due to the defendant's prior conviction for an offense under 18 U.S.C. § 2422(b). A term of supervised release of five years is mandated by statute for this offense, with a maximum possible supervised release term of life. As indicated above, the sentencing guidelines range is 135 to 168 months of incarceration, 5 years to life supervised release, and a fine of $15,000 to $150,000.

The government submits that the sentencing guideline range, although advisory, is the appropriate starting point from which to calculate a reasonable sentence pursuant to *Booker* and

9

18 U.S.C. § 3553(a), despite the defendant's argument that the range calculated pursuant to the U.S. Sentencing Guidelines should be given little weight.  The defendant urges the Court to reject the advisory guidelines range, claiming that USSG § 2G2.2 is not based on empirical data and national experience.  The defendant's arguments ignore the constitutional duty bestowed on Congress to set sentencing policy, as well as Sixth Circuit precedent and the extensive attention that Congress and the Commission have devoted to developing these guidelines.

First, the defendant's argument regarding Congress' involvement in the development of U.S.S.G. § 2G2.2 overlooks the important fact that it is the duty of Congress to set penalties for criminal offenses, and it is only through the statutory directive of Congress that the Sentencing Commission has the authority to promulgate the Sentencing Guidelines.  *See* U.S. Constitution Art. 1, Sec. 8; 28 U.S.C. § 991.  In creating the United States Sentencing Commission, Congress gave explicit instructions to the Commission, and retained for itself the role of directing and overseeing the Commission's efforts.  Congress directed the Commission to create Guidelines that were consistent with Congress' grading of the offense, the nature of the harm of the offense, "the community view of the gravity of the offense," "the public concern generated by the offense," the "deterrent effect" of sentencing, and the frequency of such offenses.  28 U.S.C. § 994(c).  In delegating the role to the Commission, Congress retained and continues to exercise substantial authority over sentencing.  Congress identifies and sets penalties for criminal conduct, and has specifically directed that sentencing ranges must be "consistent with all pertinent provisions of Title 18, United States Code."  28 U.S.C. § 994(b)(1).  Thus, the defendant's argument that the Court should give little weight to U.S.S.G. § 2G2.2 because of Congress' involvement in the promulgation of the guideline is without merit.

The defendant's arguments also run afoul of numerous decisions of the Sixth Circuit refuting similar arguments about the creation of U.S.S.G. § 2G2.2. In *McNerney,* the Sixth Circuit, in addressing the issue of counting duplicate images under § 2G2.2(b)(7), noted that this section was "properly enacted pursuant to explicit congressional mandate." 636 F.3d at 778. After reviewing a number of cases and arguments regarding the propriety of congressionally-mandated guidelines enhancements, the Court further stated, "it is unquestionably Congress' constitutional prerogative to issue sentencing directives such as the sentencing enhancements for quantity of images at issue in this case." *Id*. Similarly, in *United States v. Cunningham*, 680 F.Supp.2d 844 (N.D. Ohio, 2010), the Court confronted the arguments regarding the propriety of § 2G2.2, and determined that § 2G2.2 was properly formulated and, specifically that the enhancements imposed by the Sentencing Commission were proper. In making this finding, the Court stated:

> The Commission...appears to have gone above and beyond to justify its amendments. Far from failing to rely on empirical data and its own expertise, the Commission has conducted formal studies whenever possible and has conducted extensive analyses to fulfill its statutory obligations. Have politicians unduly hampered the Commission's ability to perform its duties? There can be no question that they have interfered. However, at the same time, Congress' actions could be viewed as a necessary response to a crime that was spiraling out of control. As internet access grew across this country, so did the online community of pedophiles that supports the market for child pornography. Rather than remain silent, Congress acted. In turn, the Commission used empirical data and its own expertise to craft the appropriate Guideline amendments.

*Id.* at 851. The Sixth Circuit has found the reasoning of the District Court in *Cunningham* to be sound, and rejected the lack of empirical evidence argument that the defendant here propounds,

11

stating, "we have heard this argument on several occasions and have rejected it each time." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012).  The Court went on to list five cases in which it had rejected the empirical evidence arguments, and stated "We do the same here, reaffirming the principle that a district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing so." *Id*.  Thus, the defendant's arguments regarding § 2G2.2 have been fully addressed by the Courts in this jurisdiction, and have been found lacking.

The defendant's attack on § 2G2.2 also ignores the history of the amendments to § 2G2.2 that demonstrate that it is the product not only of the Commission's institutional expertise, but also of thoughtful congressional oversight.  In particular, the history reflects Congress's study of the sources and harms of child pornography, and the Commission's involvement with Congress in the development of the guidelines.

From the beginning, Congress' changes to the statutes and guidelines relating to child pornography were based on the increase in such activity and the detriment to society resulting from the sexual exploitation of children.  In 1995, Congress "found that as the use of computers and the use of electronic communications increase . . .  has, unfortunately, also increased for criminal use, including the sale of pornographic materials."  141 Cong. Rec. H4122-01 at H4123. As a result, Congress sought not only to toughen penalties for child pornography and child exploitation, "two of the most horrendous and repulsive crimes that can possibly exist". . . which "can ruin a young person's life virtually at the time it has begun," but also to address the impact of the rise of Internet usage on these crimes.  This was the basis for the enactment of the Sex Crimes Against Children Prevention Act of 1995 ("SCACPA"), Pub. L. 104-71, which directed the Commission to raise the Base Offense Level and to add an enhancement in cases under 18

12

U.S.C. § 2251(c)(1)(A) or § 2252(a)(1)-(3) where a computer was used to "transmit the notice of" or "transport or ship" the images. H.R. REP. 104-90.  The House Judiciary Committee Report on SCACPA found that computer transmission of child pornography presented a significant threat to children: "Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience."  H.R. Rep. 104-90.

Subsequent amendments to the statutes and guidelines relating to child pornography and child exploitation offenses similarly addressed the changes in the way child pornography was created, distributed and maintained as a result of computers and the internet, and it was clear to Congress when those amendments were passed that most child pornography offenses involved use of a computer.  "The vast majority of child pornography prosecutions today involve images contained on computer hard drives, computer disks, and/or related media."   Prosecutorial Remedies and Tools against the Exploitation of Children Today Act ("PROTECT"), Pub. L. No 108-21, Section 501(6).  At the time it passed PROTECT, Congress also reiterated the compelling government interest in protecting children from those who would sexually exploit them.  *Id*. at Section 501(2).   In formulating PROTECT, the Judiciary Committee heard extensive testimony that addressed child pornography and the technological changes in its production and dissemination.  S. Rep. 108-002.  Thus, far from mere "emotional pleas of members of Congress who often say things to play to their constituents" (Defendant's Memorandum at 5), the amendments to the guidelines for child pornography offenses were Congress' reasoned response to crimes that were exponentially increasing with the advent of the internet and caused unimaginable harm to the young victims.

Finally, the defendant's argument that the enhancements that three of the specific offense characteristics that were applied in his case – prepubescent minors, sadistic or masochistic

conduct, and use of a computer – artificially inflate his guideline range, ignores very important considerations behind these enhancements.  First, in regards to prepubescent minors and sadistic or masochistic conduct, these enhancements, while they may apply in many cases, indicate the greater harm inflicted when victims of sexual abuse are very young, when they are penetrated by an adult, and/or when they are bound and gagged for the sexual pleasure of those who abuse them and those who watch their abuse.  Similarly, it is only common sense that an individual who takes pleasure in viewing more horrific and violent depictions of the sexual abuse of young children is a greater danger to children.  This proposition is supported by the defendant's own words when he described the acts he wanted to perpetrate on the fictitious five-year-old girl in this case.  Secondly, in regards to the use of a computer, this enhancement clearly takes into account the increased harm to a child victim that results from the images of their abuse being forever perpetuated via ongoing trading over the internet.  Far from being redundant or artificially inflating the guideline range, these enhancements reflect the reasoned judgment that more egregious and dangerous behavior warrants a harsher sentence.

In light of the foregoing, the government respectfully submits that the sentencing guideline range pursuant to U.S.S.G. § 2G2.2 that was properly calculated by the Probation Officer should not be ignored as the defendant suggests.  The government believes that the properly calculated guidelines range is the appropriate starting point from which to determine a sentence that is "sufficient but not greater than necessary" to meet the goals of sentencing.  The government further submits that the aggravating circumstances present in this case, whether captured by the specific offense characteristics applicable pursuant to U.S.S.G. § 2G2.2 or not, take it outside the average child pornography possession case.  As discussed above, the defendant's activities went beyond the disturbing offense of possessing images that depicted the

14

sexual abuse of children.  On balance, the defendant's activities cannot be outweighed by arguments about the way in which the guidelines have been created and amended.  His actions and history call for nothing less than a guidelines sentence.

Upon consideration of the guideline range, the sentencing guideline policy statements, and all of the other sentencing factors, the government submits that the downward departure the defendant seeks is not warranted, as a balancing of all of the factors the Court is to consider pursuant to § 3553(a) weigh in favor of a guideline sentence.

## CONCLUSION

For the foregoing reasons, the United States concurs with the recommendation of the Probation Officer, and submits that a within guidelines sentence is a reasonable and appropriate sentence in this case.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

s/Heather A. Hill
HEATHER A. HILL (6291633)
Assistant United States Attorney
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Heather.Hill @usdoj.gov

15

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Sentencing Memorandum was served this 17th day of January, 2013, electronically upon: Steven S. Nolder, Esq., attorney for William R. Kisor, II.

                                                  s/Heather A. Hill

                                                  HEATHER A. HILL (6291633)
                                                  Assistant United States Attorney